IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAS ADISA GAMBA OLUWA,[1]

    Plaintiff,                    No. CIV S-04-0233 MCE GGH P

    vs.

DIRECTOR OF CALIFORNIA
DEPT. OF CORRECTIONS, et al.      ORDER and

    Defendants.              FINDINGS & RECOMMENDATIONS

_____/

Plaintiff is a state prisoner proceeding pro se with a civil rights complaint pursuant to 42 U.S.C. § 1983. Pending before the court is 1) defendants' September 13, 2004 motion to dismiss to which plaintiff filed an opposition on September 27, 2004; and 2) plaintiff's motion for summary judgment filed on October 12, 2004 (apparently re-served on November 19, 2004), to which defendant filed an opposition on December 21, 2004[2]; plaintiff filed his putative reply on January 3, 2005, which unserved document the court, by order filed on February 2,

---

[1] Plaintiff appears to have omitted his surname in filing and proceeding in this action. The Clerk of the Court will be directed to correct his name on the certificate of service and the case caption to include plaintiff's full name.

[2] Defendants were granted an extension of time to file their opposition by order filed on December 13, 2004.

1

2005, directed plaintiff to serve upon defendants within 15 days; instead, on March 7, 2005, petitioner, averring that he did not have a copy of his January 3, 2005 reply, re-served his January 12, 2004 notice of appeal to the district judge. Plaintiff was cautioned by the court in the February 2, 2005 order that failure to serve defendants his opposition might result in the imposition of sanctions. Although plaintiff's response to the court order was timely because, by application of the mailbox rule the March 7, 2005 filing was filed on February 15, 2005, plaintiff's re-service of a document other than the reply filed was unresponsive and no explanation was set forth as to why he did not have a copy of the reply filed; thus, the January 3, 2005 reply will be stricken from the record.

Complaint

Plaintiff is proceeding against former CDC Director Edward Alameida in his individual capacity and current CDC Director Jeanne S. Woodford in her official capacity.[3] Plaintiff alleges that defendant CDC Director has failed to follow state law in keeping accurate and updated records as to his sentence and has thus been unable or failed to transmit accurate records to the Board of Prison Terms, the only agency authorized to release plaintiff from defendant CDC Director's custody, resulting in his "false imprisonment." Complaint, pp. 3-3(a). Plaintiff alleges that, as an indeterminately sentenced inmate, he is entitled, if an accurate records review were conducted, to a term-setting hearing pursuant to state law and directives. Complaint, p. 3(a). Plaintiff alleges that defendant Alameida (and his agents) conducted a computation review hearing at the third level of an inmate appeal and failed to abide by "Chairman R.K. Procunier's 75/30 Directive," such that plaintiff was not scheduled for a term-setting hearing and the Board of Prison Terms was not convened. Id. Plaintiff seeks money damages and injunctive relief.

---

[3] Plaintiff seeks money damages from defendant Alameida. The court substituted in the name of current CDC Director Woodford to the extent that plaintiff seeks prospective injunctive relief. See Order, filed on May 28, 2004.

Motion to Dismiss

      Defendants move for dismissal on several grounds, pursuant to nonenumerated Fed. R. Civ. P. 12(b), as well as Fed. R. Civ. P. 12(b)(6). Defendants contend that 1) plaintiff failed to exhaust his administrative remedies;[4] 2) that neither defendant is a proper defendant; 3) that the federal court lacks jurisdiction to enforce state law; 4) that the relief sought must be obtained through a petition for writ of habeas corpus; defendants also assert, but do not list as separate grounds in their notice of motion, that plaintiff has made only conclusory allegations and that plaintiff has failed to allege the personal involvement of either defendant in the alleged violations. MTD, pp. 1-2, 4-5.

*Legal Standard under Fed. R. Civ. P. 12(b)(6)*

      A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that plaintiff cannot prove any set of facts consistent with his allegations which would entitle him to relief. NOW, Inc. v. Schiedler, 510 U.S. 249, 256, 114 S. Ct. 798, 803 (1994); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), Cervantes v. City of San Diego, 5 F.3d 1273, 1274-75 (9th Cir. 1993). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

      In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general

---

[4] Defendant sets forth this ground twice. MTD, pp. 1-2.

3

allegations embrace those specific facts that are necessary to support the claim.'" NOW, 510 U.S. at 256; 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S.555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may disregard allegations in the complaint if they are contradicted by facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Furthermore, the court is not required to accept as true allegations that contradict facts which may be judicially noticed. Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988). The court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

\\\\\
\\\\\
\\\\\

Failure to Exhaust

*Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

In a motion to dismiss for failure to exhaust administrative remedies under non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of raising and proving exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The parties may go outside the pleadings, submitting affidavits or declarations under penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a record. Wyatt v. Terhune, 315 F.3d at 1120 n.14. The court provided plaintiff with such fair notice by order filed on July 9, 2004.

Should defendants submit declarations and/or other documentation demonstrating an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing. Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to the court's attention those parts of the complaint upon which plaintiff relies. If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate remedy for non-exhaustion of administrative remedies. Wyatt v. Terhune, 315 F.3d at 1120.

Defendants concede that plaintiff filed an administrative appeal on November 6, 2003, alleging that he had served more than 21 years on his sentence which, in the matrix of the Board of Prison Terms (BPT), is the usual base term for second degree murder. MTD, p. 6 & Exhibit A. Defendants also note that plaintiff contended that his period of parole was required to be reduced. Id. Plaintiff's appeal was denied, defendants argue, because it had not been filed with the appropriate agency, the BPT, but plaintiff did not thereafter file an appeal to the BPT, but instead brought this lawsuit. Id.

A review of defendants' exhibit demonstrates that plaintiff sought access to his CDC records because he had been informed by the BPT that they use CDC records to make their determinations. MTD, Exhibit A. While plaintiff was directed to address the issue of the length

5

of his parole to the BPT, plaintiff was also directed to file a separate 602 appeal with respect to his request for a computation review, in a document dated as signed on December 4, 2003, but also separately stamped with two other dates, December 30, 2003 and January 2, 2004. Thereafter, in a CDC screening document initialed on January 7, 2004, but separately stamped both on January 16, 2004 and January 28, 2004, it appears that plaintiff sent a subsequent 602 appeal which was rejected because a "request for computation hearing is a separate issue and must be sent to case records." Id. On January 22, 2004, plaintiff wrote a letter, separately file-stamped January 28, 2004, asking if he was being denied a computation review hearing at the second level of appeal. Id. His letter expresses confusion because he had submitted his appeal to the records office, following which he was instructed to request a computation review hearing, which he did to the second level, after which, despite having been notified that a computation review hearing would be conducted at the second level, no computation review hearing was scheduled. Id.

Defendants' exhibit also shows that plaintiff had signed a notice of his right to request a computation review hearing and of computation review hearing rights on November 21, 2003; such a hearing would be conducted at the second level of review and would afford due process protections. Defendants produce an undated supplemental page to the second level appeal response in which plaintiff's appeal is deemed partially granted and states that a correctional case records supervisor, on February 23, 2004, had attempted to interview plaintiff to provide him with a Haygood Computation Review Hearing, but plaintiff had refused to speak with that individual. At that time, the records supervisor had explained to plaintiff that only the BPT could change the length or terms of parole.

In opposition, plaintiff has attached a third level appeal decision, dated February 21, 2002, while plaintiff was at CSP-Sacramento, which obviously predates the 602 inmate appeal filed on November 6, 2003 at plaintiff's CSP-Lancaster address. In that appeal, plaintiff argued that his life sentence should be converted to a determinate term. It was noted that the

1  Salinas Valley State Prison records supervisor had "attempted to conduct a Haygood hearing with
2  the appellant but due to his argumentative behavior it was terminated." The appeal decision went
3  on to state the CDC could not convert plaintiff's life term and that [t]he Board of Prison Terms
4  shall determine what length of imprisonment the appellant will serve." Opp., Exhibit A.
5         On the face of it on this record, it is difficult to discern whether plaintiff has
6  administratively exhausted the issue of whether or not CDC has kept accurate records with regard
7  to plaintiff's sentence and has been unable to transmit accurate records to the BPT, resulting in a
8  longer sentence for plaintiff. However, within his complaint plaintiff plainly references a third
9  level appeal decision wherein no computation review was conducted. Averring that plaintiff's
10 argumentative behavior was the cause of an attempted review being terminated, that February
11 2002 decision, the one plaintiff has produced with his opposition, goes on to assert that a review
12 of plaintiff's case revealed that CDC could not determine the length of plaintiff's sentence but
13 that only BPT could do so. Opp., Exhibit A. It is plaintiff's position herein, however, that he has
14 not asked the CDC to convert his life sentence but that the BPT cannot go forward without
15 proper computation of his sentence by the CDC and the transmittal of his properly kept records to
16 the BPT to serve as notification to them that a term-setting hearing should be convened. Opp., p.
17 3. In support of plaintiff's position, he cites a letter from the BPT's executive officer indicating
18 that prisoner records are maintained by the CDC "at the institutional level" and a certification
19 from CDC's custodian of records that the Director of the CDC is the legal custodian of the
20 records of state prisoners. Opp., p. 3, Exhibits B & C.
21         The third level decision, upon which plaintiff predicates his claim of
22 administrative exhaustion, obviously predates the 602 appeal filed in November of 2003. While
23 defendants touch only on the administrative appeal initially filed in November of 2003 and argue
24 that plaintiff should have gone on to appeal administratively to the BPT, the existence of the
25 earlier third level decision by CDC is sufficient to meet the exhaustion requirements of the
26 PLRA. Even assuming that the November 2003 appeal, which was apparently never exhausted

to third level, is the governing appeal for purposes of this action, defendants do not assert that plaintiff failed to exhaust at the administrative level within CDC but that plaintiff did not proceed to exhaust his grievance through another entity, the BPT. Defendants do not cite applicable authority for such a requirement. The court finds that plaintiff has exhausted his administrative remedies, despite his having apparently refused to cooperate in efforts to conduct the computation review he sought, because in either grievance at issue, the appeal response did not indicate that any such lack of cooperation kept the grievance process from going forward. Defendants' motion on this ground should be denied.

Proper Defendant/No Personal Involvement

Defendants' argument that plaintiff has not named the proper defendant is not well-taken. Plaintiff concedes that it is the BPT who ultimately determines the length of his sentence or parole but alleges that defendant CDC Directors have failed to compute his sentence properly and transmit accurate records, records of which each defendant (a former and current CDC Director) was, respectively, the legal custodian, and without which the BPT is unable to act. On this ground, defendants' motion fails.

Defendants' contention that plaintiff has failed to allege the personal involvement of either defendant Alameida or defendant Woodford is accurate; however, only defendant Alameida, the former CDC director, is being sued in his individual capacity for money damages, while defendant Woodford, the current CDC director, has been substituted in only in her official capacity, on the basis of the prospective injunctive relief sought by plaintiff. See Order, filed on May 28, 2004; Fed. R. Civ. P. 25(d)(1).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the

8

1 actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See
2 Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362
3 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the
4 meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or
5 omits to perform an act which he is legally required to do that causes the deprivation of which
6 complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

7 Moreover, supervisory personnel are generally not liable under § 1983 for the
8 actions of their employees under a theory of respondeat superior and, therefore, when a named
9 defendant holds a supervisorial position, the causal link between him and the claimed
10 constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862
11 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S.
12 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel
13 in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
14 Cir. 1982).

15 However, just as it is not necessary to allege Monell[5] policy grounds when suing a
16 state or municipal official in his or her official capacity for injunctive relief related to a procedure
17 of a state entity, Chaloux v. Killeen, 886 F.2d 247 (9th Cir. 1989), it follows that it is not
18 necessary to allege the personal involvement of a state official when plaintiffs are attacking a
19 state procedure on federal grounds that relates in some way to the job duties of the named
20 defendant.  All that is required is that the complaint name an official who could appropriately
21 respond to a court order on injunctive relief should one ever be issued.  Harrington v. Grayson,
22 764 F. Supp. 464, 475-477 (E.D.Mich. 1991); Malik v. Tanner, 697 F. Supp. 1294, 1304
23 (S.D.N.Y. 1988).  ("Furthermore, a claim for injunctive relief, as opposed to monetary relief,
24 may be made on a theory of respondeat superior in a § 1983 action."); Fox Valley Reproductive

---

26 [5] Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

9

1  Health Care v. Arft, 454 F. Supp. 784, 786 (E.D. Wis. 1978).  See also, Hoptowit v. Spellman,
2  753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit to continue against an official's
3  successors despite objection that the successors had not personally engaged in the same practice
4  that had led to the suit.

5  Therefore, while defendants are correct that defendant Alameida, sued only in his
6  individual capacity, should be dismissed, defendant Woodford is the official who could
7  appropriately respond to a court order requiring injunctive relief.  This action, therefore, should
8  proceed only against defendant Woodford who is sued only in her official capacity.  Defendants'
9  motion to dismiss on this ground should be granted as to defendant Alameida but denied as to
10 defendant Woodford.

11      Jurisdiction

12 Defendants contend that this federal court does not have jurisdiction to require a
13 state official or state agency to abide by state law because it is barred from doing so by the
14 Eleventh Amendment.  MTD, p. 4.  It is true that the Eleventh Amendment does not permit
15 federal courts to enjoin state officials in their enforcement of state law.  Pennhurst v. Halderman,
16 465 U.S. 89, 104, 104 S. Ct. 900 (1984).  However, if the state law creates a federal liberty
17 interest, federal courts may enjoin state actors to comply with the federal parameters.

18 Defendants concede that the complaint is framed "in terms of violations of due
19 process both substantive and procedural, and of equal protection."  MTD, p. 4.  Defendants also
20 concede that it could be "argued that [plaintiff] has a liberty interest in being paroled."  Id.
21 Narrowly construing plaintiff's claims, however, defendants assert that plaintiff's "real
22 objective" is to have this court require state officials to perform their state law duties and to
23 compel the state to follow state law.  Id.  In opposition, plaintiff claims that his due process
24 rights under the Fourteenth Amendment have been violated as well as the Eighth Amendment's
25 prohibition against cruel and unusual punishment.  Opp., pp. 1-2.
26 \\\\\

The state procedure at issue requires that prison terms be set in accordance with uniform guidelines. Defendants do not dispute that there is any such applicable state mandate or otherwise challenge the applicability of the state procedure to plaintiff's sentence. Thus, they have failed to provide a sufficient basis for this court to dismiss this action. "State law may create a liberty interest when it protects an individual against arbitrary action of government." Chaney v. Stewart, 156 F.3d 921, 925 (9th Cir. 1998), citing Wolff v. McDonnell, 418 U.S. 539, 558, 94 S. Ct. 2963 (1974); Picray v. Sealock, 138 F.3d 767, 770 (9th Cir.1998). While acknowledging that the analysis in Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109 S. Ct. 1904, (1989), may have been disapproved by the decision in Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995), the Ninth Circuit nevertheless discussed the Thompson approach because that analysis did not result in the court's having to draw the "negative inferences" disfavored in Sandin, 515 U.S. at 480, 115 S. Ct. at 2299.[6] Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir. 1997). Quoting Thompson, at 463, 109 S. Ct. at 1909, the Ninth Circuit stated that "[i]n sum, the use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion, forces a conclusion that the state has created a liberty interest." Neal v. Shimoda, supra, at 829-830.

While Sandin did eliminate the "mandatory language" approach, the Ninth Circuit has found that holding to be limited to internal disciplinary regulations, not affecting the creation of liberty interests, for example, in parole. Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003), citing McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir, 2002) [citations omitted]. The liberty interest created by the California parole scheme "is created ...upon the incarceration of the inmate." Biggs, supra, at 914. While it is not clear that the procedure at issue herein falls under the mantle of Biggs, defendants have made no

---

[6] State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).

11

showing that such a liberty interest is not implicated. The motion should be denied on this ground.[7]

Habeas

Defendants maintain that the "crux of plaintiff's claim is that he is serving a longer term because defendants have not set the length of his term." MTD, p. 7. For this reason, they argue, plaintiff may not seek relief pursuant to 42 U.S.C. § 1983. Id.

Generally,

> § 1983 must yield to the more specific federal habeas statute with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence. See Preiser v. Rodriguez, 411 U.S. 475, 489, 93 S. Ct. 1827 [] (1973). Such claims fall within the 'core' of habeas corpus and are thus not cognizable when brought pursuant to § 1983. Ibid. By contrast constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance. See Muhammad v. Close, 540 U.S.749 ----, 124 S.Ct. 1303, 1304 [] (2004) (per curiam); Preiser, supra, at 498-499, 93 S. Ct. 1827.

Nelson v. Campbell, 541U.S. 637, 124 S. Ct. 2117, 2122 (2004).

However, a more recent Supreme Court case clarifies and reaffirms that where, as here, a plaintiff challenges as unconstitutional a state procedure, or as in this case, the omission to perform such a procedure, "§ 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner [emphasis in original]." Wilkinson v. Dotson, __ U.S.__, 125 S. Ct. 1242, 1247 (2005). In Wilkinson, success for one of the inmate plaintiffs meant "at most [a] new eligibility review, which at most will speed *consideration* of a new parole application"; success for the other plaintiff meant "at most, a new parole hearing at which ...parole authorities may, in their discretion, decline to shorten his prison term." Id., at 1248. The relief sought here is for the court to direct the

---

[7] The court, of course, makes no finding here that the liberty interest has been violated.

defendant to provide accurate records related to plaintiff's sentence to the BPT. While the ultimate result of such action may be that plaintiff is released from prison earlier than he would be if such action did not occur, it is relief, as in Wilkinson, sufficiently attenuated from his ultimate release such that he may proceed through the vehicle of an action pursuant to 42 U.S.C. § 1983. Defendant's motion should be denied on this ground.

### Conclusory Allegations

Defendants' contention that plaintiff's allegations are insufficiently specific in failing to set forth any putative wrongdoing by defendants is not well-supported given the liberal pleading rules of Fed. R. Civ. P. 8 and that this action proceeds with a pro se plaintiff. Haines v. Kerner, 404 U.S. at 520, 92 S. Ct. at 596. The motion on this ground should be denied.

### Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment but has failed to comply with Local Rule 56-260(a), which, in relevant part, requires the following:

> Each motion for summary judgment ...shall be accompanied by a "Statement of Undisputed Facts" that shall enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon to establish that fact.

Because, as a threshold matter, plaintiff has not submitted a separate statement of undisputed facts upon which he predicates his motion, the court finds that the motion is improperly filed and must recommend denial without prejudice of plaintiff's motion.

Accordingly, IT IS ORDERED that:

1. The Clerk of the Court is directed to modify plaintiff's name in this case and on future certificates of service to include plaintiff's surname, "Oluwa," so that plaintiff's name is recorded as being Ras Adisa Gamba Oluwa.

2. Plaintiff's unserved January 3, 2005 reply to defendants' December 21, 2004 opposition to plaintiff's October 12, 2004 motion for summary judgment (which motion plaintiff

13

re-served on November 19, 2004) is stricken from the record.

   IT IS RECOMMENDED that:

   1. Defendants' September 13, 2004 motion to dismiss be granted as to defendant Alameida and he be dismissed from this action and that the motion be denied as to all other grounds;

   2. This action proceed only against defendant Woodford, in her official capacity, for prospective injunctive relief only; and

   3. Plaintiff's October 12, 2004 (apparently re-served on November 19, 2004), motion for summary judgment be denied without prejudice for plaintiff's failure to file the motion in compliance with Local Rule 56-260(a).

   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 7/6/05

            /s/ Gregory G. Hollows

            GREGORY G. HOLLOWS
            UNITED STATES MAGISTRATE JUDGE

GGH:009
oluw0233.mtd