1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10    RAS ADISA GAMBA OLUWA,

11              Plaintiff,                    No. CIV S-04-0233 MCE GGH P

12        vs.

13
      DIRECTOR CALIFORNIA
14    DEPT. OF CORRECTIONS, et al.,

15              Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>

16    _____/

17    <u>Introduction</u>

18              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

19    1983.  Pending before the court is defendants' motion for summary judgment, filed on August

20    21, 2006; plaintiff's opposition to the motion is docketed as having been filed on October 10,

21    2006.[1]

22    <u>Complaint</u>

23              This action is now proceeding only as to plaintiff's claims for prospective

24    injunctive relief, defendant Alameida, against whom plaintiff had sought money damages, having

25    _____

26         [1] Per the mailbox rule, plaintiff's opposition was filed on October 4, 2006.

                                            1

1   been dismissed as a defendant.  <u>See</u> <u>Order</u>, filed on September 7, 2005, adopting <u>(Order &</u>

2   <u>Findings and Recommendations</u>, filed on July 7, 2005.  Plaintiff has been proceeding against

3   former CDC Director Jeanne S. Woodford in her official capacity; however, as defendant notes,

4   pursuant to Fed. R. Civ. P. 25(d), James Tilton, the acting Secretary of the California Department

5   of Corrections and Rehabilitation (CDCR), who has assumed the duties of the former director, is

6   substituted for former CDC Director Woodford.  Therefore, this action proceeds against

7   defendant Secretary Tilton, in his official capacity only.

8           Plaintiff alleges that defendant has failed to follow state law in keeping accurate

9   and updated records as to his sentence and has thus been unable or failed to transmit accurate

10  records to the Board of Prison Terms, the only agency authorized to release plaintiff from

11  defendant Tilton's custody, resulting in his "false imprisonment."  Complaint, pp. 3-3(a).

12  Plaintiff alleges that, as an indeterminately sentenced inmate, he is entitled, if an accurate records

13  review were conducted, to a term-setting hearing pursuant to state law and directives.

14  Complaint, p. 3(a).  Plaintiff alleges that former defendant Alameida (and his agents) conducted a

15  computation review hearing at the third level of an inmate appeal and failed to abide by

16  "Chairman R.K. Procunier's 75/30 Directive," such that plaintiff was not scheduled for a term-

17  setting hearing and the Board of Prison Terms was not convened.  <u>Id</u>.  Only plaintiff's claims for

18  prospective injunctive relief remain.

19  <u>Motion for Summary Judgment</u>

20          Defendant moves for summary judgment on the grounds that: 1) plaintiff has no

21  right to a term-setting hearing independent of parole hearings provided by state law; 2) plaintiff

22  has been provided all mandated hearings for fixing a parole date; 3) plaintiff has not suffered

23  damages relating to the maintenance of his records; and 4) defendant Tilton has no involvement

24  in maintaining plaintiff's records.  Motion for Summary Judgment (MSJ) Notice, pp. 1-2.

25  \\\\\

26  \\\\\

1     *Legal Standard for Summary Judgment*

2        Summary judgment is appropriate when it is demonstrated that the standard set

3 forth in Fed. R. Civ. P. 56(c) is met. "The judgment sought shall be rendered forthwith if . . .

4 there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment

5 as a matter of law." Fed. R. Civ. P. 56(c).

6        Under summary judgment practice, the moving party

7     always bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the

8     pleadings, depositions, answers to interrogatories, and admissions
    on file, together with the affidavits, if any," which it believes

9     demonstrate the absence of a genuine issue of material fact.

10 Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986). "[W]here the

11 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

12 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

13 to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered,

14 after adequate time for discovery and upon motion, against a party who fails to make a showing

15 sufficient to establish the existence of an element essential to that party's case, and on which that

16 party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete

17 failure of proof concerning an essential element of the nonmoving party's case necessarily

18 renders all other facts immaterial." Id. In such a circumstance, summary judgment should be

19 granted, "so long as whatever is before the district court demonstrates that the standard for entry

20 of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

21        If the moving party meets its initial responsibility, the burden then shifts to the

22 opposing party to establish that a genuine issue as to any material fact actually does exist. See

23 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

24 (1986). In attempting to establish the existence of this factual dispute, the opposing party may

25 not rely upon the allegations or denials of its pleadings but is required to tender evidence of

26 specific facts in the form of affidavits, and/or admissible discovery material, in support of its

1   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

2   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

3   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

4   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

5   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

6   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

7   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

8            In the endeavor to establish the existence of a factual dispute, the opposing party

9   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

12  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

13  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

14  56(e) advisory committee's note on 1963 amendments).

15           In resolving the summary judgment motion, the court examines the pleadings,

16  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

17  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

18  477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

19  placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

20  at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

21  opposing party's obligation to produce a factual predicate from which the inference may be

22  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

23  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

24  party "must do more than simply show that there is some metaphysical doubt as to the material

25  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

26  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct.

4

1   1356 (citation omitted).

2   On July 9, 2004, the court advised plaintiff of the requirements for opposing a

3   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

4   F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

5   Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

6   *Undisputed Facts*

7   Plaintiff has expressly stipulated to defendant's undisputed facts (DUF) nos. 1

8   through 7, taking issue only with DUF nos. 8 and 9.  See, plaintiff's "Opposition Statements of

9   Disputed and Undisputed Facts," pp. 1-2.   Plaintiff is a prisoner in the custody of the California

10  Department of Corrections and Rehabilitation (CDCR).  DUF no. (#) 1, Declaration (Dec.) of T.

11  Throop, Technician for Board of Parole Hearings (BPH) at Pelican Bay State Prison (PBSB)

12  (Throop Dec.), ¶¶ 1-2.

13  Plaintiff was convicted of count one, second degree murder (Cal. Penal Code §

14  187); count two, child endangerment (Cal. Penal Code § 273a(1)); and count three, child beating

15  (Cal. Penal Code § 273d).  Judgment on his conviction was entered on May 26, 1982.  DUF #2,

16  Exhibits (Exs.) A, Judgment, and B, Abstract of Judgment; Dec. of Donna Sackett, PBSP

17  Custodian of Records (Sackett Dec.).

18  Plaintiff committed the murder on or about April 27, 1980.  DUF # 3, Ex. C,

19  Status [Computation Sheet]; Sackett Dec.

20  Plaintiff was sentenced to a term of 15 years to life for second degree murder.

21  DUF #4, Exs. A and C; Sackett Dec.

22  Plaintiff had his initial parole hearing on December 6, 1989.  Plaintiff was found

23  not suitable for parole and he was given a two-year deferral for his subsequent parole hearing.

24  DUF #5, Throop Dec., ¶ 3; Exh. D, Cumulative Case Summary/Chronological History; Sackett

25  Dec.

26  \\\\\

1    Plaintiff has had subsequent parole hearings on December 18, 1991; June 21,

2  1994; September 20, 1995, and May 15, 2001.  He was found not suitable for parole at each of

3  these hearings.  Plaintiff was given a five-year deferral following his subsequent hearing of May

4  15, 2001.  DUF # 6, Throop Dec., ¶¶ 4 and 5; Exs. D and E, Life Prisoner Parole Decision Face

5  Sheet for hearing on May 15, 2001; Sackett Dec.

6    Plaintiff's most recent parole hearing occurred on July 24, 2006.[2]  Plaintiff refused

7  to attend this hearing, and was not found suitable for parole at the hearing.  Plaintiff was given a

8  five-year deferral for a subsequent hearing.  DUF # 7, Throop Dec., ¶ 6; Exs. D and F, Life

9  Prisoner Parole Decision Face Sheet for July 2006, hearing; Sackett Dec.

10    *Disputed Facts*

11    Plaintiff takes issue with defendant's statement that the Director (now Secretary)

12  of California Department of Corrections and Rehabilitation has no personal involvement in and

13  does not direct the handling or maintenance of plaintiff's central file.  DUF # 8, Throop Dec., ¶ 7.

14    Plaintiff also seeks to dispute the representation that the Director (now Secretary)

15  of California Department of Corrections and Rehabilitation has no personal involvement in and

16  does not direct the transmittal of plaintiff's files to the Board of Parole Hearings (formerly the

17  Board of Prison Terms) for hearings.  DUF # 9, Throop Dec., ¶ 8.

18    The court notes that the defendant's personal involvement need not be alleged in

19  this action which proceeds now only on a claim for prospective injunctive relief.  Defendant's

20  argument that there is no respondeat superior liability under § 1983 is thus inapposite (MSJ., p.

21  21) since the relief at issue is not for money damages.  As this court has previously noted,[3] just as

22

23

24    [2] Ex. F, the exhibit relied on for the date of July 24, 2006, is a Life Prisoner Parole
   Decision Face Sheet which is dated July 26, 2006.

25

26    [3] See (Order &) Findings and Recommendations, filed on July 7, 2005, pp. 9-10, adopted
   by Order, filed on September 7, 2005.

1   it is not necessary to allege <u>Monell</u>[4] policy grounds when suing a state or municipal official in his

2   or her official capacity for injunctive relief related to a procedure of a state entity, <u>Chaloux v.</u>

3   <u>Killeen</u>, 886 F.2d 247 (9th Cir. 1989), it is not necessary to allege the personal involvement of a

4   state official when plaintiffs are attacking a state procedure on federal grounds that relates in

5   some way to the job duties of the named defendant.  All that is required is that the complaint

6   name an official who could appropriately respond to a court order on injunctive relief should one

7   ever be issued.  <u>Harrington v. Grayson</u>, 764 F. Supp. 464, 475-477 (E.D. Mich. 1991); <u>Malik v.</u>

8   <u>Tanner</u>, 697 F. Supp. 1294, 1304 (S.D.N.Y. 1988).  ("Furthermore, a claim for injunctive relief,

9   as opposed to monetary relief, may be made on a theory of <u>respondeat superior</u> in a § 1983

10  action."); <u>Fox Valley Reproductive Health Care v. Arft</u>, 454 F. Supp. 784, 786 (E.D. Wis. 1978).

11  <u>See</u> <u>also</u>, <u>Hoptowit v. Spellman</u>, 753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit

12  to continue against an official's <u>successors</u> despite objection that the successors had not

13  personally engaged in the same practice that had led to the suit.  Defendant Tilton is the official

14  who could appropriately respond to a court order requiring injunctive relief, should any be

15  warranted.

16      *Discussion*

17      Plaintiff maintains that he has a right to a distinct term-setting hearing without

18  consideration of suitability under a 1975 directive of the CDCR Director and that the failure of

19  the CDCR Director to maintain accurate records of his sentence has prevented this hearing.

20  Defendant contends that a fixed parole date is the only means by which a fixed date for a life

21  sentence may be obtained, and that a fixed parole date is only obtained through parole hearings

22  conducted by the Board of Parole Hearings (BPH).  MSJ, p. 7.  Defendant asserts that plaintiff

23  has no independent rights under the 1975 directive (as plaintiff describes it, Chairman's Directive

24  75/30), including any right to a distinct term-setting hearing outside the parole hearing process,

25  _____

26      [4]  <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978).

1    and that plaintiff has received the parole hearings mandated by California law and has had the

2    right to review and supplement records used in his parole hearings.  Id.  Defendant argues that

3    while plaintiff complains about the manner in which the records in his prison file are maintained,

4    this claim serves as the basis for plaintiff's request that the court order CDCR to conduct a term-

5    setting hearing, such that the gravamen of plaintiff's complaint is that he has a right to a separate

6    and distinct term-setting hearing.  MSJ, p. 10.  Defendant refers to plaintiff's pretrial statement

7    (filed on June 5, 2006) wherein plaintiff couches the issue as "[w]hether or not Ras is entitled to

8    a 'distinct' term-setting hearing," the primary basis for which is pursuant to "Chairman's

9    Directive No. 75/30."  MSJ, p.10, quoting plaintiff's pretrial statement,  3:10-11, 4:2.

10          Defendant states that plaintiff, sentenced as a life prisoner under the new

11    Determinate Sentencing Law to a 15-year to life term, has had full access to the applicable state

12    procedures for obtaining a parole date for prisoners with life sentences and had received the

13    hearings mandated by state law.  MSJ, p. 10.  Thus, defendant avers, that plaintiff cannot state a

14    claim for failure to provide a term-setting hearing predicated on either state law or the nature of

15    his sentence.  Id.

16          Defendant also maintains that Directive 75/30 is an outdated and obsolete CDC

17    provision that does not apply to plaintiff's sentence and therefore does not create an independent

18    right to a hearing beyond the established parole rights and procedures afforded to life prisoners

19    under state law.  Id.  Moreover, according to defendant, plaintiff has a right to review and

20    supplement the records considered by the parole hearing panel and the Director (or Secretary) is

21    not involved in either the maintenance of plaintiff's central file or in the transmittal of records to

22    the BPH panel.  MSJ, p. 11.

23          Plaintiff avers in opposition to defendant that the relief he seeks is for the court to

24    direct defendant to provide accurate records related to his sentence to the BPH at his next parole

25    hearing.  Opposition (Opp.), p. 4.  Plaintiff claims that in 2002, he was denied his right to have

26    the defendant's (or his staff's) assistance apparently in the form of an "inspection of [plaintiff's]

records and the records of all indeterminate sentenced prisoners who had been before the Board

and who may have benefitted from Directive No. 75/30 at their hearings (males and females) and

that such an inspection would assist [plaintiff] in making a claim of a right to a term-setting

hearing without first being found suitable for release...."  Opp., pp. 6-7.

Plaintiff appears to predicate his belief that he is entitled to a so-called term-

setting hearing in large part on a thin and tenuous thread: conversations with indeterminate

sentenced life prisoners with anonymous friends who have purportedly been granted release dates

under Directive 75/30.  Opp., p. 7.  Plaintiff proceeds to list the names of six indeterminate life

sentenced prisoners with whom he states that he conferred regarding this matter.  Id.

Plaintiff goes on to state that even if Directive No. 75/30 does not support his

claim to a term-setting hearing without first having been found suitable for parole, plaintiff could

still benefit from an inspection and compilation of an adequate hearing record that he could use

in court to assist him in getting a fair BPH hearing.  Opp., pp. 7-8.

To the extent that plaintiff's claim is that the defendant does not properly follow

state law, this is not a challenge to the constitutionality of parole procedures.  Rather, such a

claim challenges the interpretation and application of state law as it applies to plaintiff's

sentence.  The alleged improper application of state law is not subject to review by federal court.

Lewis v. Jeffers, 497 U.S. 764, 779, 110 S. Ct. 3092, 2102 (1990).

In any event, plaintiff's claim alleging that defendants failed to follow Chairman's

Directive 75/30 is without merit.  Prior to July 1, 1977, California operated under an

indeterminate sentencing law (ISL) system.  Guzman v. Morris, 644 F.2d 1295, 1296 (9th Cir.

1981).  On July 1, 1977, California's Indeterminate Sentencing Law (DSL) went into effect.  Id.

As part of the conversion from the ISL to the DSL, certain indeterminate sentences were to be

"reset."  Id.  The provisions of Chairman's Directive 75/30 plainly apply to the setting of primary

terms on indeterminate sentences imposed for felonies committed prior to July 1, 1977.  See In

\\\\\

9

1   re: Williams, 53 Cal. App. 3d 10, 14, 125 Cal. Rptr. 457 (Cal. App. 1975);[5] see also, defendant's

2   Ex. G (Copy of Chairman's Directive 75/30).[6]   Plaintiff cites no colorable authority for the

3   applicability of the this pre-1977 directive to his 1982 sentence for a crime committed in 1980.

4   A note in one case plaintiff himself cites in his complaint makes clear that the Board of Prison

5   Terms replaced the Adult Authority, from which the Directive at issue emanated, and that the ISL

6   was repealed and replaced by the DSL.  See Sellars v. Procunier, 641 F.2d 1295, 1297 n. 1 (9th

7   Cir. 1981).[7]  As defendant notes, Directive 75/30 was formulated in response to the state supreme

8   court's decision in In re Rodriguez, 14 Cal. 3d 639, 122 Cal. Rptr. 552 (1975), when the old ISL

9   law was applicable and when it was the California Adult Authority which determined the length

10  of an inmate's sentence or when he or she was to parole.

11              As noted, plaintiff's commitment offense occurred, and plaintiff was sentenced,

12  after July 1, 1977, under the indeterminate sentencing provisions of the determinate sentencing

13  law.  Plaintiff's sentence of fifteen years to life in prison is an indeterminate sentence.  In re

14  Dannenberg, 34 Cal. 4th 1061, 1078, 23 Cal. Rptr. 3d 417, 426 (Cal. 2005).  As such, plaintiff

15

16      [5] In part the Adult Authority Director set forth that: "Primary terms will be fixed
beginning September 2, 1975.  A primary term will be fixed for each inmate on each of his
17  offenses the first time he appears before the Adult Authority on or after that date."

18      [6] The aim of the directive, dated September 2, 1975, designed to fix a primary term for
each offense, was "to bring Adult Authority term setting practices into compliance with recent
19  changes in the law."   The Directive sets forth that "[e]ach inmate will have the same rights and
his term fixing hearing as he has at his parole consideration hearing."  With respect to
20  "Scheduling Term Fixing Hearings," the Directive states that "[t]erms will be fixed in
conjunction with regularly scheduled parole consideration or parole violation hearings....no
21  inmate will have his regularly scheduled Board appearance without special arrangements
between the Department and the Adult Authority."  The Directive sets forth, inter alia, criteria to
22  be considered in fixing a base term and adjusting it to fix the primary term and sentence ranges.

23      [7] "Under California's repealed Indeterminate Sentence Law, the California Adult
Authority fixed the prison term and set the parole release date of every person sentenced by a
24  trial court judge to state prison.  Subsequent to the filing of this lawsuit the State of California
abolished the Adult Authority and replaced it with the Board of Prison Terms.  Cal. Penal Code §
25  5078.  California also repealed its Indeterminate Sentence Law and replaced it with a
Determinate Sentence Law, Cal. Penal Code § 1170, et seq., under which prison terms are now
26  set by trial judges pursuant to standards prescribed by the legislature."

1   "becomes eligible for parole after serving [a] minimum term[] of confinement," but the

2   determination of his actual term of confinement rests with the Board of Prison Terms [now

3   Board of Parole Hearings].  Id.  Plaintiff's claim that he is entitled to a term-setting hearing,

4   pursuant to a superannuated Chairman's Directive, absent a finding of suitability for parole by

5   the BPH, is without merit; that directive has no application to plaintiff.  Defendant correctly

6   states that plaintiff's indeterminate sentence is governed by Cal. Penal Code § 1168(b), and the

7   only procedure for plaintiff to obtain a fixed date for release is through the action of the BPH.

8   MSJ, p. 13, citing Cal. Penal Code § 3040; CAL. CODE REGS. tit.xv, § 2000(b)(10).[8]  Plaintiff makes

9   no showing that he has not received the parole hearings to which he is entitled.

10          With regard to plaintiff's claim that defendant has failed to keep accurate,

11   updated records as to his sentence and has failed to transmit accurate records to the BPH,

12   plaintiff does not clarify the deficiencies of defendant or defendant's staff in maintaining his

13   record.  Although plaintiff claims to have been denied his right to the assistance of CDCR staff

14   for the purpose of reviewing his records in order to have a meaningful BPH hearing, he bases this

15   claim on his supposed entitlement to a term-setting hearing independent of any finding of

16   suitability for parole at a BPH hearing.  As to his claims related to an alleged denial of his right

17   to review his records in 2002, or to have CDCR staff assist him for that purpose in a computation

18   review process, his own exhibit reveals that it was he who disrupted the effort of a Salinas Valley

19   State Prison records supervisor's attempt to conduct a hearing related to his request.  Opp., Ex.

20   C.

21   \\\\\

22

23          [8] CAL. CODE REGS. tit.xv, § 2000(b)(10): "Board of Prison Terms [Parole Hearings][]: The
        administrative board responsible for setting parole dates, establishing parole length and
24      conditions, discharging sentences for certain prisoner and parolees; granting, rescinding,
        suspending, postponing, or revoking paroles; conducting disparate sentence reviews; advising on
25      clemency matters; and handling miscellaneous or other statutory duties.  Persons under the
        board's jurisdiction are all adult felons committed by superior courts to the Director [Secretary]
26      of Corrections [and Rehabilitation] under Penal Code sections 1168 and 1170 and all adult felons
        under the Indeterminate Sentence Law."

1    To the extent that plaintiff contends that he has a due process right to speak on his

2  own behalf at his parole hearing and to ask and answer questions, plaintiff does not dispute the

3  fact that it was he who refused to attend his most recent subsequent parole suitability hearing, the

4  one which occurred in July, 2006, hearing, wherein he was not found suitable for parole and

5  given a five-year deferral for a subsequent hearing.  DUF # 7.  Nor does he set forth any evidence

6  in his opposition of circumstances or occasions prior to that wherein he was denied any right to

7  attend his prior hearings.

8    In his opposition, plaintiff complains that defendant has failed to provide him with

9  "the evidence of materials that may be considered by the Board panel" at his BPH hearing and

10  his next hearing will not occur until 2011.  Opp., p. 8.  Plaintiff states that the court could direct

11  defendant to assist him with access to his records.  Id.  However, plaintiff does not make clear

12  how he is being impeded by defendant or defendant's staff in access to his records or in what

13  manner his records have been inaccurately maintained.  Defendant points out that plaintiff has, as

14  do all California prisoners, a right to inspect his record, request amendment to correct outdated,

15  inaccurate or incomplete information and the right to appeal in writing any denial of any request

16  to amend information.  Opp., p. 20, citing CAL. CODE REGS. tit.xv, § 3450(a) & (b).  Should the

17  prisoner's appeal be denied, he or she may submit to the office responsible for maintaining the

18  record a statement of disagreement to be placed in the record and, further, may enter a written

19  response in his record to any material in his prison file.  Id., citing CAL. CODE REGS. tit.xv, §§

20  3450(c), 2247.

21    Plaintiff also has rights pertaining to any BPH hearing as set forth in CAL. CODE

22  REGS. tit.xv, §§ 2245 through 2255.  Id.  Plaintiff has a right to be present and to speak on his own

23  behalf and to ask and answer questions at his hearing, as well as to present relevant documents to

24  the BPH panel.  Opp., pp. 20-21, citing CAL. CODE REGS. tit.xv, §§ 2247, 2249.  Plaintiff has, inter

25  alia, as well, a right to an impartial panel, a right to "reasonable assistance in preparing for the

26  hearing," a right to a copy of the record of the hearing upon request, a right to a copy of the

written decision. CAL. CODE REGS. tit.xv, §§ 2250, 2251, 2254, 2255.  While the court agrees with plaintiff that defendant has the authority to provide accurate records related to his sentence to the BPH panel, plaintiff does not identify any inaccuracy in his record; rather, he seeks to implicate defendant for not affording him some ill-defined and inapplicable information or re-computation of his sentencing record to be produced for an unauthorized, outmoded and inapplicable term-setting hearing.  Plaintiff disputes no genuine issue of material fact.  Defendant's motion for summary judgment should be granted.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment, filed August 21, 2006, be granted and judgment be entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 2/27/07

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
oluw0233.msj